135 N.J. Super. 81 (1975)
342 A.2d 591
STATE OF NEW JERSEY, PLAINTIFF,
v.
CATHERINE McCARTIN AND MARY ORR, DEFENDANTS.
Superior Court of New Jersey, Law Division  (Criminal).
Decided June 18, 1975.
*82 Mr. Gerald D. Miller for defendants (Messrs. Miller, Hochman, Meyerson & Miller, attorneys).
Mr. Robert Zatorski, Assistant Prosecutor for the State (Mr. James T. O'Halloran, Prosecutor of Hudson County, attorney).
THURING, J.S.C.
This is a motion by defendants pursuant to 18 U.S.C.A. § 2518(10) and N.J.S.A. 2A:156A-21 to suppress at trial (a) evidence of telephone conversations overheard and taped, and (b) evidence of gambling paraphernalia seized under search warrants issued partially on the basis of the telephone conversations.
At noon on October 5, 1971 the Kearny Police were advised by a local resident that he heard considerable static and strange voices on his daughter's telephone. "Fearful of being robbed," he alerted the police.[1] The police, on invitation, listened in on the telephone and overheard extensive evidence of horse-race betting at unknown locations. They then recorded gambling oriented conversations by means of a cassette tape *83 recorder attached with a suction cup and induction coil to the back of the telephone receiver. With the information provided by the conversations the police pressed their search for the illicitly used telephones. A nearby duplex apartment where defendants lived side by side became the focus of the police investigation. Search warrants were issued on October 6, 1971. A raid on defendants' premises netted implements of gambling and large sums of money. Both defendants were indicted for bookmaking, N.J.S.A. 2A:112-3, and defendant Orr was also indicted under another provision of the same statute for keeping a place to which persons may resort for gambling.
Defendants contend that the police without having first obtained a court order illegally intercepted and taped telephone conversations, in violation of the Omnibus Crime Control Act of 1968, Title 3, Wiretap Provisions, 18 U.S.C.A. § 2510 et seq. and the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq.
The State's position is that the actions of the police in listening to and taping the conversations heard over the citizen's telephone did not come within the proscription of federal or state law since no "interception" of conversations, as defined in the statutes ever took place.
Both statutes are aimed at the willful interception and revelation of wire or oral communications where privacy is an anticipated concomitant of the instrument's use. The language of the federal statute is identical with that used in N.J.S.A. 2A:156A-3(a), which reads:
Except as otherwise specifically provided in this act, any person who:
a. Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication; * * *
shall be punished as provided by law.
Thus this court must determine whether there was a willful interception of telephone conversations and improper disclosures of such conversations.
*84 Both statutes define "intercept" to mean:
* * * the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device. [N.J.S.A. 2A:156A-2(c); 18 U.S.C.A. § 2510(4)]
In addition, in both enactments, an "electronic, mechanical or intercepting device" is defined to mean any device or apparatus which can be used to intercept a wire or oral communication other than:
(a) Any telephone or telegraph instrument, equipment or facility, or any component thereof, furnished to the subscriber or used by a communication common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business. * * * [N.J.S.A. 2A:156A-2(d); 18 U.S.C.A. § 2510(5)]
N.J.S.A. 2A156A-3 has never been judicially construed in a reported case in our State, but in State v. Vizzini, 115 N.J. Super. 97 (App. Div. 1971), the court did consider the New Jersey predecessor "wiretap" statute and 18 U.S.C.A. § 2511 as they relate to unlawful interception of a wire or oral communication. See Flaherty v. State, 255 Ark. 187, 500 S.W.2d 87 (Sup. Ct. 1973), cert. den. sub nom. Flaherty v. Arkansas, 415 U.S. 995, 94 S.Ct. 1599, 39 L.Ed.2d 893 (1974) (Douglas, J. dissenting).
In Vizzini a police officer present in a raided premises under a warrant heard the phone ring. The officer lifted the phone after he attached an induction coil to the back of the telephone receiver and connected it to a tape recorder. The officer engaged in and recorded his conversations with the caller relative to gambling activities. The conduct of the officer was upheld because the officer was a "party" to the telephonic conversation; thus his conduct was found to be exempt from the statute's prohibition. 18 U.S.C.A. § 2511 (c) The court in Vizzini relied on Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957), and State v. Carbone, 38 N.J. 19 (1962), the latter of which *85 held that interception of the communication did not occur where the "bettor intended the words to reach the officer, albeit the bettor thought he was someone else" (at 26, 183 A.2d at 5).
The facts in Vizzini are not at all analagous to the instant case, requiring this court to test the applicability of the statutes in a new factual context. Here we do not have a direct party to the conversation as found in Vizzini but do have an inadvertent overhearing of conversations by a person who in no way initiated mechanical interference with the telephone or its line.
The State and defendant cite Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1967). In that case a phone on a four-party line was installed in Lee's home. A week later the police directed that a telephone in a neighboring house be connected to the same party line. Equipment was attached which permitted the overhearing of conversations on the party line without lifting the receiver. On defendant's trial for lottery charges, recordings of conversations heard on the party line were admitted into evidence over defendant's objection. The conviction was affirmed by the Supreme Court of Florida, holding that no federal or state law precluded the admissibility of the conversations.
The State of Florida contended that no interception could have taken place since persons using party lines must realize that their conversations might be overheard. The court responded:
This is not a case, however, where the police merely picked up the receiver on an ordinary party line, and we need not decide whether § 605 would be applicable in those circumstances. For here the police did much more. They deliberately arranged to have a telephone connected to Lee's line without his knowledge, and they altered that connection in such a way as to permit continuous surveillance and recording of all conversations on the line [392 U.S. at 381; 88 S.Ct. at 2098; emphasis supplied]
The court reversed on the basis that § 605 of 47 U.S.C.A. the forerunner to 18 U.S.C.A. § 2510, was applicable to the *86 states under the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
Section 605 of the Federal Communications Act was amended in 1968 and certain mandates in connection with "wiretapping" were transferred to the Omnibus Crime Control Act of 1968, 18 U.S.C.A. § 2510 et seq. By the amendation of § 605 Congress intended that law enforcement officers' activities regarding wiretapping be governed by the new Crime Control Act. United States v. Hall, 488 F.2d 193, 195 (9 Cir.1973); 1968 U.S. Code Cong. and Adm. News, P. 2196. The New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq., is comparable to the federal act.
Under the pre-1968 § 605 illegal "interception" by wire connoted in general a situation in which by surreptitious means a third party willfully overhears a telephone conversation between two other persons. United States v. Pasha, 332 F.2d 193 (7 Cir.1964), cert. den. 378 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45 (1964). The term "interception" was carried over to both the federal and New Jersey statutes and still means the willful overhearing by a third person of conversations of others via a device of some sort. State v. Vizzini, supra. It has been recently held that the willful interception can be accomplished by use of a telephone extension. United States v. Harpel, 493 F.2d 346 (10 Cir.1974); Horn v. State, 298 So.2d 194 (Fla. D. Ct. App. 1974).
The court in Lee v. Florida, supra, found that the facts clearly spelled out a deliberate illegal "interception" coupled with an improper divulgence of the telephone communications, and ordered the conversations suppressed.
The case at bar factually begins as an inadvertent not a deliberate interception; thus Lee v. Florida, clearly does not decide the issue here.
In Roberts v. State, 453 P.2d 898 (Alaska Sup. Ct. 1969), cert. den. 396 U.S. 1022, 90 S.Ct. 594, 24 L.Ed.2d 515 (1970), a defendant was convicted of second degree murder. He appealed on the grounds that evidence obtained in violation *87 of § 605 of the federal act and a section of Alaska's State Wiretap Act should have been suppressed on his pretrial motion. There a private citizen, who had no knowledge that the telephone company had connected another party to her private line, picked up her receiver and overheard conversations between persons connected with an unlawful shooting. Upon report to the police she was encouraged to continue to listen to and tape conversations. Defendant moved to suppress evidence obtained, alleging illegal interception. The Alaska court affirmed the conviction and distinguished Lee v. Florida, supra, and decided:
We are persuaded that the Congress of the United States never intended to prohibit disclosure to law enforcement authorities in the case where a private citizen, such as Mrs. Marine, on her own initiative without any suggestions of police direction, coercion, or assistance, inadvertently overheard a conversation over which was believed by her to be a private line. * * *
On the basis of this record, we do not believe that the federal exclusionary rule would encompass the situation where a private citizen, acting independently of any police solicitation, cooperation, or assistance violated section 605 of the Federal Communications Act by perpetrating an unlawful interception and then divulging the communication to the police.... Weighing against the necessity for respect of federal law is the inadvertent conduct of a private citizen and the duty of all citizens to cooperate and assist law enforcement agencies and officers in the detection and prevention of criminal conduct. [453 P.2d at 904-905]
As stated previously, the case at bar does not involve a willful interception but rather one inadvertently made by a private citizen. To suppress this evidence would be the same as holding that it was a useless gesture for this public-spirited citizen to report possible criminal activity to the police.
A further question presents itself, i.e., whether the malfunctioning telephone was an "intercepting device" or whether that phone falls within the exception of N.J.S.A. 2A:156A-2(d)(1) and 18 U.S.C.A. 2510(5)(a)(i) of a telephone "furnished to the subscriber * * * and being used by the subscriber or user in the ordinary course of its business." If it does fit the exception, then necessarily the police conduct on *88 October 5 and 6, 1971 does not fall within the purview of the cited statutes.
It is obvious that under the circumstances of this case the telephone was employed by the subscriber in the ordinary course of his daily activities. The fact that the telephone was malfunctioning does not change the situation. There is no evidence that the police caused the malfunction. The police had every right to be where they were because of the invitation of the subscriber.
Further, it cannot reasonably be argued that where the police fortuitously are made aware of a malfunctioning telephone which enables them to gain evidence of a crime, and the owner of the telephone invites the police to listen to the conversation, that such evidence may not properly be admitted at trial. The exclusionary rule espoused in Mapp v. Ohio, supra, was intended to discourage illegal police conduct of the type not here present. State v. Zito, 54 N.J. 206 (1966); State v. Kasabucki, 52 N.J. 110 (1968).
It would be patently wrong to deny law enforcement the right to use inculpatory evidence derived purely from the chance circumstance of a malfunctioning telephone. It would likewise be grossly improper for the police to ignore the obvious in their fight against crime. As Chief Justice Weintraub noted in State v. Giardina, 27 N.J. 313, 318 (1958), "A criminal statute should not be invoked in defiance of the common sense of the situation."
Whatever was heard by virtue of the phone subscriber picking up the receiver of the malfunctioning phone which was used in the ordinary course of the subscriber's activities was clearly not an interception under either N.J.S.A. 2A:156A-2(d) or 18 U.S.C.A. § 2510(5)(a). Accordingly, since there was no interception, the police did not violate either N.J.S.A. 2A:156A-3 or 18 U.S.C.A. § 2511.
The recording of the phone conversation is immaterial when "the overhearing is itself legal," United States v. Harpel, supra, 493 F.2d at 350. A tape recorder is a mere accessory to better memorialize the overheard conversation. *89 Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).
The court therefore concludes that there was no willful interception of the telephone conversations making unnecessary any finding with respect to the revelation of such communications at time of trial.
Additionally, the court finds the search warrants issued proper in all respects and the evidence seized thereunder may properly be submitted to the jury at the trial of the matter.
The motion is denied and the State will submit an appropriate order.
NOTES
[1] The girl's telephone had been installed a month earlier and was in proper operating condition until the morning in question.